ANDREW K JACOBSON (CSBN: 148583)
andy@bayoaklaw.com
**BAY OAK LAW**
1939 Harrison St Suite 929
Oakland, CA 94612
Telephone: (510) 208-5500

Counsel for RJB EMPLOYWELL LLC

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**EUREKA DIVISION**

| | |
|---|---|
| **RJB EMPLOYWELL LLC,** | Case No.: |
| Plaintiff, | **COMPLAINT FOR:** |
| v. | **1. TRADEMARK INFRINGEMENT (15 U.S.C. § 1125(a))** |
| **COREY NUNES; COREY NUNES CAPITAL LLC; MICHAEL HAMOEN; DYNAMIC AI HUB; EMPLOYWELLUSA LLC; and OFFERGRID USA LLC,** | **2. UNFAIR COMPETITION (Cal. Bus, & Prof. Code §§ 17200 *et seq.*)** |
| | **3. TRADE SECRET MISAPPROPRIATION (18 U.S. CODE § 1836, CAL. CIV. CODE §§ 3426, *et seq.*)** |
| Defendants. | **4. BREACH OF CONTRACT** |
| | **5. FRAUD** |
| | **6. UNJUST ENRICHMENT** |
| | **7. CONVERSION** |
| | **8. DECLARATORY RELIEF** |
| | **9. INJUNCTIVE RELIEF** |
| | **JURY TRIAL DEMANDED** |

Plaintiff RJB EMPLOYWELL LLC ("RJB"), by and through its undersigned counsel, Bay Oak Law Firm, APLC, hereby complains against Defendants COREY

**COMPLAINT** - 1

NUNES, COREY NUNES CAPITAL, MICHAEL HAMOEN, DYNAMIC AI HUB, and OFFERGRID USA, (collectively, "Defendants"), and alleges as follows:

## JURISDICTION AND VENUE

1.     This is an action including for infringement under the trademark laws of the United States, 15 U.S.C. § 1051, *et. seq.*, and Cal. Bus, & Prof. Code §§ 17200 *et seq.* All claims under federal and state law are based upon a common case that would ordinarily be tried in one judicial proceeding. This Court has subject matter jurisdiction including under 28 U.S.C. §§ 1331, 1337 and 1338(a) and 1338(b).

2.     This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over Plaintiff's state law claims because the claims are so related to the federal claims that they form part of the same case or controversy.

3.     This Court has personal jurisdiction over Defendant Cory Nunes as he resides within this District, in Ferndale, California. Defendants regularly transact and solicit business in the State of California and within this District, has purposefully availed themselves of the laws and courts of California, and has committed acts of infringement and related torts giving rise to this action in this District, causing harm to Plaintiff herein.

4.     This Court has jurisdiction over Defendant Cory Nunes Capital LLC as it is an entity controlled by Defendant Cory Nunes and has committed acts of infringement and related torts giving rise to this action in this District causing harm to Plaintiff herein.

5.     This Court has personal jurisdiction over Defendant Michael Hamoen as he is a partner, contractor and/or agent of Defendant Cory Nunes and has committed

acts of infringement and related torts giving rise to this action in this District causing harm to Plaintiff herein.

6. This Court has jurisdiction over Dynamic AI Hub as it is an entity controlled by Defendant Michael Hamoen and has committed acts of infringement and related torts giving rise to this action in this District causing harm to Plaintiff herein.

7. This Court has jurisdiction over Defendant Employwell USA LLC as it is an entity controlled by Defendant Corey Nunes and has committed acts of infringement and related torts giving rise to this action in this District causing harm to Plaintiff herein.

8. This Court has jurisdiction over Defendant OfferGrid USA LLC as it is an entity controlled by Defendant Corey Nunes and has committed acts of infringement and related torts giving rise to this action in this District causing harm to Plaintiff herein.

9. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1400(a). A substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District. Plaintiff is a limited liability company domiciled in Wyoming and has suffered harm in this District.

## DIVISIONAL ASSIGNMENT

10. Pursuant to Civil L.R. 3-5(b), this action is properly assigned to the Eureka Division of the Northern District of California. Defendant Corey Nunes resides in Humboldt County, California. A substantial part of the events and transactions giving rise to this action occurred in Humboldt County, California.

**THE PARTIES**

11.    RJB is a business entity organized and existing under the laws of the State of Wyoming and is the owner and operator of the EmployWell Program and associated branding, domains, systems, and business infrastructure. RJB operates the website www.employwellnow.com and has developed substantial goodwill and common law trademark rights in the EmployWell Program name through continuous commercial use. RJB has filed a trademark application with the United States Patent and Trademark Office (USPTO) for the EmployWell Program mark in Classes 36 and 44, which is currently pending.

12.    Defendant Cory Nunes ("Nunes") is an individual residing in Humboldt County, California, at 356 Craig Street, Ferndale, California 95536. Nunes holds California Department of Insurance License No. 4058851 (Accident & Health, Life). Nunes operates the business entity Cory Nunes Capital and, on information and belief, exercised operational control, direction, authority, and/or participation in the creation, deployment, marketing, and operation of the EmploywellUSA platform and related conduct alleged herein.

13.    Defendant Corey Nunes Capital ("CNC") is a California Limited Liability Company and associated with the wrongful conduct alleged herein.

14.    Defendant Michael Hamoen ("Hamoen") is an individual residing in the Greater Toronto Area, Ontario, Canada. Hamoen operates Dynamic AI HUB, a business entity through which he designed, built, and operated the EmployWellUSA website and associated systems on behalf of and in coordination with Defendant Nunes. The meta-author tag on the EmployWellUSA website identifies "Dynamic AI HUB" as the site's creator. Hamoen registered the domain www.employwellusa.com through GoDaddy on

January 28, 2026, months before meeting Plaintiff' leadership, indicating premeditated intent to build unauthorized infrastructure around Plaintiff' EmployWell Program brand. Subsequently, Defendants caused the URL employwellUSA.com to redirect to employ-well.com, both of which are connected to offergridusa.com, which is owned and operated by Hamoen. On information and belief, Hamoen acted as Defendant Nunes's agent, subcontractor, and/or co-conspirator in connection with the conduct alleged herein.

15.     Defendant Dynamic AI HUB ("AI HUB") is a business entity of form unknown and associated with the wrongful conduct alleged herein.

16.     Defendant EmploywellUSA LLC ("EmploywellUSA") is a California Limited Liability Company and associated with the wrongful conduct alleged herein.

17.     Defendant OfferGrid USA LLC ("OfferGrid") is a California Limited Liability Company and associated with the wrongful conduct alleged herein.

18.     Plaintiff is unaware of the true names and capacities of Defendants sued herein as DOES 1 through 10 and therefore sue such Defendants by fictitious names. Plaintiff will seek leave to amend this Complaint to substitute the true names of the Doe Defendants when their identities are ascertained.

19.     Plaintiff is informed and believes, and thereon alleges, that at all times relevant herein each Defendant was the agent, joint venturer, or co-conspirator of each other Defendant, and in doing the acts and omissions alleged herein was acting within the scope of such agency, joint venture, or conspiracy, with the knowledge or ratification of each other Defendant.

//

//

**FACTUAL ALLEGATIONS**

20. This action arises from Defendants' unauthorized use of Plaintiff's EmployWell Program branding, proprietary business materials, onboarding systems, marketing infrastructure, and confidential operational information in connection with the creation, operation, and repeated redeployment of the website known as "EmployWellUSA" (employwellusa.com) and related systems.

21. Plaintiff developed and operated the EmployWell Program, including associated branding, domains, marketing materials, onboarding systems, business relationships, and operational workflows related to Section 125 employee-benefit and reimbursement programs.

22. Defendants gained insider access to Plaintiff's systems, operational processes, partner relationships, contracts, onboarding methods, and confidential business information through referral and broker relationships connected to Plaintiff's business.

23. After obtaining access to Plaintiff's business infrastructure and proprietary information, Defendants created and operated a confusingly similar competing platform using the derivative name "EmployWellUSA," while presenting services substantially similar to Plaintiff's services in the same market and industry.

24. Defendants used Plaintiff's branding, marketing language, operational structures, partner references, onboarding workflows, agreements, and proprietary business concepts without authorization.

25. Defendants' conduct caused and is causing substantial marketplace confusion among brokers, referral partners, prospects, employers, and potential clients

regarding whether Defendants' website and operations were affiliated with, endorsed by, or operated by Plaintiff.

26.    In recorded Zoom meeting on May 7, 2026, Defendant Cory Nunes acknowledged the unauthorized nature of the conduct, stating words to the effect that he and his associates had been "running with EmployWell like it's ours."

27.    In the same recorded meeting, Defendant Michael Hamoen, operating through his company Dynamic AI HUB and acting on behalf of and in coordination with Defendant Nunes, demanded payment in exchange for surrendering the domain and made statements indicating intent to divert Plaintiff's business opportunities and sales.

28.    Defendants repeatedly continued and redeployed the infringing website and systems after receiving direct notice from Plaintiff that the conduct was unauthorized and causing harm. The website has gone through at least four distinct versions across at least three different hosting platforms, each time rebuilding after enforcement action to continue infringing on Plaintiff' EmployWell Program brand.

29.    Multiple third-party platforms and providers subsequently took enforcement action against the EmployWellUSA website after reviewing Plaintiff's complaints. Lovable (website hosting platform) suspended the site, and GoHighLevel (a subsequent hosting platform) removed the domain from its customer's account on two separate occasions after the site operator manually reactivated it. Plaintiff additionally filed abuse reports and complaints with Cloudflare (content delivery network) and GoDaddy (domain registrar).

30.    Despite those suspensions and enforcement actions, Defendants relaunched the infringing platform within hours of each takedown, demonstrating

willful and deliberate defiance of both Plaintiff's rights and third-party enforcement decisions.

31. Defendants further exposed Plaintiff and Plaintiff's partners to significant reputational and operational harm by publicly displaying contracts, partner materials, onboarding systems, and workflows tied to Plaintiff's business ecosystem, including confidential contracts belonging to Plaintiff' partner Attentive.

32. Defendants additionally created onboarding and intake systems requesting highly sensitive employee information, including Social Security numbers and payroll-related data, under branding confusingly associated with Plaintiff and Plaintiff's partners, without authorization, oversight, or approval from Plaintiff.

33. Plaintiff has filed complaints with the California Department of Insurance and the California Attorney General's Office regarding Defendants' conduct.

34. Plaintiff seeks damages, injunctive relief, declaratory relief, disgorgement, attorney's fees as permitted, and all other appropriate relief.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### (Trademark Infringement – Lanham Act 15 U.S.C. §1125(a)

35. Plaintiff realleges and incorporates by reference every allegation set forth in paragraphs 1 through 34, inclusive, as though fully set forth herein.

36. Plaintiff possesses protectable common law trademark rights and goodwill associated with the EmployWell Program branding and associated commercial identity, established through continuous commercial use predating Defendants' registration of employwellusa.com. Plaintiff has additionally filed a trademark application with the

USPTO for the EmployWell Program mark (Classes 36 and 44), which is currently pending.

37.     Defendants used confusingly similar branding in commerce without authorization.

38.     Defendants' conduct caused and was likely to cause confusion regarding affiliation, sponsorship, endorsement, origin, and authorization.

39.     Plaintiff suffered damages and irreparable harm as a result.

## SECOND CLAIM FOR RELIEF
### (Unfair Competition - Cal. Bus, & Prof. Code §§ 17200 *et seq.*)

40.     Plaintiff realleges and incorporates by reference every allegation set forth in paragraphs 1 through 39, inclusive, as though fully set forth herein.

41.     Defendants intentionally attempted to leverage control of disputed branding, domains, infrastructure, and associated goodwill in order to pressure Plaintiff into ongoing commercial arrangements and payments, including the $10,000/month demand made on May 9, 2026.

42.     When Plaintiff rejected said demands, Defendants retaliated by relaunching the infringing website and continuing to divert Plaintiff's business opportunities.

43.     Defendants' coercive conduct constitutes unfair business practices in violation of California Business and Professions Code sections 17200, *et seq*.

44.     As a direct and proximate result of Defendants' acts of unfair competition, Plaintiff has suffered and continues to suffer substantial damages. Plaintiff is entitled to all available remedies, including actual damages, disgorgement of profits, statutory damages, attorneys' fees, and injunctive relief.

**THIRD CLAIM FOR RELIEF**
**(Trade Secret Misappropriation - 18 U.S. Code § 1836,**
**Cal. Civ. Code §§ 3426, *et seq*.)**

45.     Plaintiff realleges and incorporates by reference every allegation set forth in paragraphs 1 through 44 inclusive, as though fully set forth herein.

46.     Plaintiff possessed confidential and proprietary operational systems, workflows, onboarding structures, implementation methods, carrier relationships, compensation models, partner referral processes, and related information deriving independent economic value from not being generally known by industry competitors.

47.     Plaintiff took reasonable measures to maintain the secrecy of such information, including requiring referral partners to execute agreements containing confidentiality provisions. Defendants acquired, disclosed, and/or used such information without authorization, including by publishing it on publicly accessible websites.

48.     As a direct and proximate result of Defendants' acts of trade secret misappropriation, Plaintiff has suffered and continues to suffer substantial damages. Plaintiff is entitled to all available remedies, including actual damages, disgorgement of profits, statutory damages, attorneys' fees, and injunctive relief.

**FOURTH CLAIM FOR RELIEF**
**(Breach of Contract)**

49.     Plaintiff realleges and incorporates by reference every allegation set forth in paragraphs 1 through 48, inclusive, as though fully set forth herein.

50.     On or about June 9, 2025, Plaintiff entered into the Employ Well Program – Referral Partner Agreement with signatory Wayne Murray on behalf of A-1 VA Ratings West, attached hereto as Exhibit A.

51.     On or about June 26, 2025, Defendant Nunes entered into the A-1 VA Ratings West EmployWell Program Partner Manual and Referral Partner Agreement, which contained provisions regarding confidentiality, conduct expectations, non-circumvention, non-competition, and branding restriction, attached hereto as Exhibit B.

52.     Plaintiff RJB EmployWell LLC is an intended third-party beneficiary of said agreement, as the agreement's entire purpose is to govern participation in the EmployWell Program owned and operated by Plaintiff.

53.     Defendants breached the agreement by, among other things:

   a.     Creating and operating a competing platform (EmployWellUSA) using Plaintiff' proprietary systems, branding, and referral processes, in violation of the non-competition and non-circumvention provisions;

   b.     Disclosing and publicly displaying confidential information, including compensation structures, partner names, carrier relationships, and client data, in violation of the confidentiality provisions;

   c.     Altering, paraphrasing, and misrepresenting program descriptions and savings claims without authorization, in violation of the marketing and branding guidelines;

   d.     Co-branding with the EmployWell Program without express written permission.

54.     Plaintiff was damaged in an amount to be determined at trial.

## FIFTH CLAIM FOR RELIEF
### (Fraud)

55.     Plaintiff realleges and incorporates by reference every allegation set forth in paragraphs 1 through 54, inclusive, as though fully set forth herein.

56.     Defendants knowingly made false or misleading representations regarding affiliation, authorization, operational legitimacy, and/or business relationships, including the false tagline "EmployWellUSA™ — in affiliation with The EmployWell Program" and the use of a fraudulent trademark symbol.

57.     Defendants knew or should have known that such representations were false.

58.     Plaintiff and third parties relied upon such representations, providing Defendants with confidential and proprietary information, of which this wrongfully incorporated into their competing businesses.

59.     Plaintiff has been damaged by Defendants' tortious conduct in a sum in excess of the jurisdictional minimum of this Court.

60.     Because Defendants' conduct was fraudulent, malicious, and/or oppressive, the Plaintiff is entitled to exemplary damages in an amount according to proof.

## SIXTH CLAIM FOR RELIEF
### (Unjust Enrichment)

61.     Plaintiff realleges and incorporates by reference every allegation set forth in paragraphs 1 through 60, inclusive, as though fully set forth herein.

62.     Defendants received and/or attempted to obtain commercial benefit through unauthorized use of Plaintiff's branding, goodwill, systems, business identity, and proprietary materials.

63.     Defendants' retention of  such benefits would be unjust and inequitable for Defendants to retain such benefit.

64. Equity requires restitution and disgorgement of Defendants' ill-gotten gains to Plaintiff.

## SEVENTH CLAIM FOR RELIEF
### (Conversion)

65. Plaintiff realleges and incorporates by reference every allegation set forth in paragraphs 1 through 64, inclusive, as though fully set forth herein.

66. Defendants wrongfully exercised dominion and control over Plaintiff's proprietary materials, branding assets, marketing content, partner contracts, and business identity by incorporating them into Defendants' unauthorized platform and systems.

67. Plaintiff possessed legal and equitable rights to possession and control of such materials.

68. Defendants' interference with Plaintiff's rights substantially deprived Plaintiff of the use and benefit of its property.

69. Plaintiff suffered damages as a result of Defendants' wrongful conduct.

## EIGHTH CLAIM FOR RELIEF
### (Declaratory Relief)

70. Plaintiff realleges and incorporates by reference every allegation set forth in paragraphs 1 through 69, inclusive, as though fully set forth herein.

71. An actual controversy exists regarding ownership rights, authorization rights, branding rights, and use of the disputed domain and associated materials.

72. Plaintiff seeks judicial declarations that: (a) Plaintiff possesses superior rights to the EmployWell Program name and branding; (b) Defendants have no rights or legitimate interests in the EmployWellUSA name or domain; (c) Defendants' use of the

EmployWellUSA name and domain is unauthorized; and (d) the domain employwellusa.com should be transferred to Plaintiff or cancelled.

**NINTH CLAIM FOR RELIEF**
**(Injunctive Relief)**

73.    Plaintiff realleges and incorporates by reference every allegation set forth in paragraphs 1 through 72, inclusive, as though fully set forth herein.

74.    Plaintiff has suffered and continues to suffer irreparable harm for which monetary damages alone are inadequate, as evidenced by Defendants' repeated relaunching of the infringing platform after multiple takedowns and enforcement actions.

75.    Plaintiff seeks temporary, preliminary, and permanent injunctive relief.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff EmployWell USA respectfully prays for judgment against Defendants, jointly and severally, as follows:

1.    For a finding that Defendants have infringed Plaintiff's copyright in the Work in violation of 15 U.S.C. § 1125(a);

2.    For a finding that Defendants' copyright infringement was willful within the meaning of 15 U.S.C. § 1125(c);

3.    For a finding that Defendants have infringed Plaintiff's copyright in the Work in violation of 17 U.S.C. § 501;

4.    For a finding that Defendants' copyright infringement was willful within the meaning of 17 U.S.C. § 504(c)(2);

5.    For a permanent injunction pursuant to 15 U.S.C § 11117(a) and 17 U.S.C. § 502, enjoining Defendants, their officers, agents, employees, subsidiaries, affiliates,

**COMPLAINT** - 14

successors, assigns, and all those acting in concert or participation with any of them, from reproducing, distributing, publicly displaying, offering for sale, selling, or otherwise exploiting the Work or any substantially similar works without Plaintiff's authorization, and from assisting or enabling any third-party to do so;

6. For an order pursuant to 17 U.S.C. § 503 requiring the impoundment and destruction of all Infringing Products and materials used to produce them that are in Defendants' possession, custody, or control;

7. For Plaintiff's actual damages and an accounting and disgorgement of Defendants' profits attributable to the infringement, pursuant to 15 U.S.C § 11117(a) and 17 U.S.C. § 504(b);

8. In the alternative, for statutory damages pursuant to 17 U.S.C. § 504(c), including enhanced damages up to $150,000 per work infringed for Defendants' willful infringement;

9. In the alternative, for statutory damages pursuant to 15 U.S.C § 1117(a), including enhanced damages up to $200,000 per work infringed for Defendants' willful infringement;

10. For statutory damages pursuant to 15 U.S.C. § 1117(a) for each violation of 15 U.S.C. § 1125(a), including enhanced damages for willful violations

11. For statutory damages pursuant to 17 U.S.C. § 1203 for each violation of 17 U.S.C. § 1202, including enhanced damages for willful violations;

12. For prejudgment interest on all damages at the maximum rate allowed by law;

13. For an accounting of all revenues, profits, and benefits derived by Defendants from their infringing conduct;

14. For an accounting of all revenues, profits, and benefits derived by Defendants from their breach of contract and the damages caused therefrom;

15. For Plaintiff's attorneys' fees and costs of suit pursuant to 15 U.S.C. 1117 (a), 17 U.S.C. §§ 505 and 1203(b)(5); and

16. For such other and further relief as the Court deems just.

### DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b) and Civil L.R. 3-6, Plaintiff RJB EmployWell LLC hereby demands a trial by jury on all issues so triable.

Dated: August 3, 2026.                    **BAY OAK LAW**

By: _____
ANDREW K. JACOBSON
Counsel for Plaintiff

**Exhibit A**

# Referral Partner Agreement – Employ Well Program
(Under the Jurisdiction of the State of Wyoming)

This Referral Partner Agreement ("Agreement") is entered into on this date of
_6/9/2025_____ by and between:

**Referral Partner Name:** _Wayne Murray_____
**Business Name (if applicable):** _A-1 VA Ratings West_____
**EIN (if business):** _93-2678779_____
**Address:** _1441 Kapiolani Blvd Honolulu, Hawaii 96814_____

(Hereinafter referred to as the "Referral Partner")

and

**Employ Well Program**, a business entity organized and operating under the laws of the State of Wyoming.

## 1. Purpose
The purpose of this Agreement is to outline the terms under which the Referral Partner may refer eligible businesses and employees to the Employ Well Program in exchange for commission-based compensation.

## 2. Commission Structure
a. Referral Partners will receive **$35.00 per enrolled employee, per month**.
This payout is derived from Employ Well's net profit after program costs and reflects the current standard commission. This amount may be adjusted with written notice.
Commissions are:
• Based on the number of active, enrolled employees each month
• Subject to employee retention, client billing status, and program participation
Employ Well will provide monthly summaries to confirm earned commissions. Payouts may fluctuate due to program changes, client adjustments, or service modifications.

## 3. Payment Schedule
Commissions will be paid bi-weekly on Fridays, with a maximum delay of no more than two (2) weeks after Employ Well receives payment from its partners.
All payments are contingent upon the receipt and reconciliation of funds from Employ Well's carrier or program partners. In the event of a delay, Employ Well will notify the Referral Partner with an estimated timeline.

## 4. Independent Contractor
The Referral Partner is acting as an independent contractor, not as an employee, agent, or representative of Employ Well. No taxes will be withheld. The Referral Partner is solely responsible for their own federal and state tax obligations.

1

**EMPLOY WELL PROGRAM – REFERRAL PARTNER AGREEMENT**

## 5. Non-Circumvention & Non-Competition

### a. Non-Circumvention

The Referral Partner agrees not to circumvent Employ Well by redirecting referred clients to another provider or platform offering similar services.

### b. Non-Competition

The Referral Partner shall not create, advise on, or participate in any business that competes with Employ Well's programs using its proprietary systems, carrier relationships, or referral processes, during the term of this Agreement and for two (2) years following its termination. Violation of this section may result in immediate termination and forfeiture of future commissions.

## 6. Confidentiality

The Referral Partner agrees to maintain the confidentiality of all information received from Employ Well, including but not limited to compensation models, referral processes, client data, program materials, and partner relationships. This obligation shall survive the termination of this Agreement.

## 7. Jurisdiction

This Agreement shall be governed and interpreted under the laws of the State of Wyoming. Any legal disputes shall be resolved in a court of competent jurisdiction located in Wyoming.

## 8. Arbitration Clause

In the event of a dispute that cannot be resolved through good-faith negotiations, both parties agree to submit the matter to binding arbitration in the State of Wyoming. Each party shall bear its own legal costs, and the decision of the arbitrator shall be final and enforceable.

## 9. Termination

This Agreement may be terminated by either party with or without cause by providing ten (10) days' written notice. Employ Well reserves the right to terminate immediately for cause, including breach of confidentiality or non-compete provisions.

Upon termination, any commissions already earned will be paid, but no new commissions will accrue.

## 10. Entire Agreement

This document represents the entire agreement between the parties and supersedes all prior discussions, representations, or agreements. Any amendments must be made in writing and signed by both parties.

2

**EMPLOY WELL PROGRAM – REFERRAL PARTNER AGREEMENT**

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the date first written above.

Signed by:

**Referral Partner Signature:** _Wayne Murray_____
E9FA0DB4470D487...

**Name:** Wayne Murray_____     **Date:** 6/9/2025_____

Signed by:

**Employ Well Representative Signature:** _Bianca Tubolino_____
354752A416304BF...

**Name:** Bianca Tubolino_____     **Date:** 6/9/2025_____

**EMPLOY WELL PROGRAM – REFERRAL PARTNER AGREEMENT**

**Exhibit B**

**A-1 VA Ratings West**
**EmployWell Program Partner Manual**
**Version 1.0 – Effective July 2025**
**Official Letterhead: A-1 VA Ratings West**
**Office:** (808) 856-5433
**Website:** www.a1vawest.com
**Email:** A1vawestregion@gmail.com

## Welcome Letter

*A message from the Founder*

Welcome to the EmployWell Partner Network. As a trusted partner, you are now part of a mission-driven initiative dedicated to supporting our Veterans, business communities, and working families. This manual outlines the standards, processes, and agreements necessary to ensure success for all parties involved.

— Wayne Murray, Founder

## Program Overview

**The EmployWell Program**, powered by A-1 VA Ratings West, is a value-driven payroll optimization and benefits solution designed for businesses with 50+ employees. It creates savings for employers and wealth-building opportunities for employees—while generating referral commission income for our partners.

This program is unique in its mission to: - Support Veteran employment and reduce homelessness - Provide no-cost preventive health benefits to employees - Create sustainable tax advantages for employers - Empower trusted community partners with recurring income

Our partners play a critical role in spreading this mission and making meaningful introductions to companies positioned to benefit.

## Compensation Structure

**Standard Commission**: $15 per enrolled employee per month
*Calculated post net profit from active, retained employee participation.*

**Tiered Incentives (Optional by Agreement)**: - $500 bonus at 100 employees enrolled - $1,500 bonus at 250 employees enrolled - Custom tiers available for high-volume performers

**Commission Factors**: - Based on the number of actively enrolled employees each billing cycle - Contingent on client retention, billing compliance, and program participation - Reported monthly with a transparent commission summary

**Adjustment Clause**: A-1 VA Ratings West reserves the right to adjust compensation terms with written notice due to changes in program costs, legislation, or carrier structure.

## Expectations & Conduct

Referral Partners are expected to maintain the highest standards of professionalism and integrity. This includes:

- Conducting themselves in alignment with A-1 VA Ratings West's mission and values
- Maintaining a clean and accurate public presence while representing the EmployWell Program
- Ensuring truthful, clear, and accurate information is conveyed to prospective clients
- Disclosing any conflicts of interest before engaging a referred party
- Upholding all compliance standards in line with federal and Hawai'i state regulations
- Avoiding any misrepresentation of authority, status, or program guarantees
- Cooperating with audits, partner reviews, or process updates initiated by A-1 VA Ratings West

Violation of these standards may result in suspension or termination of partnership rights, forfeiture of commissions, or removal from all future referral considerations.

## Referral Process

The EmployWell referral process is designed to ensure partner efficiency, client clarity, and fast-track onboarding. Below is the official step-by-step guide:

**Step 1: Lead Submission**
Submit qualified leads using the official A-1 VA Ratings West CRM or approved referral intake form. All submissions must include: - Business name
- Primary point of contact
- Contact info (email, phone)

- Estimated employee count
- Notes on interest or current benefits situation (if known)

### Step 2: Initial Contact & Discovery
The EmployWell Onboarding Team will contact the employer directly to conduct a discovery call and determine program fit. Referral Partners are not required to sell or explain program details—this is handled by certified program liaisons.

### Step 3: Enrollment & Verification
Upon agreement by the client, the onboarding team facilitates the enrollment process. Employee participation is verified and tracked by A-1 VA Ratings West.

### Step 4: Partner Notification
Once verification is complete, the Referral Partner will receive a monthly report showing confirmed enrollments, active status, and corresponding commissions.

### Step 5: Commission Issuance
Commissions are paid biweekly based on the verified employee enrollments retained under the terms of the program.

---

## Confidentiality & IP

All referral systems, client relationships, internal communications, compensation structures, carrier relationships, and training materials are proprietary to A-1 VA Ratings West and the EmployWell Program.

Partners agree not to: - Replicate or reverse engineer any part of the process - Share client, carrier, or compensation details with third parties - Use referral documents outside of authorized purposes

This obligation remains in force for five (5) years after termination of this agreement.

---

## Legal Terms – Referral Partner Agreement

*Appendix A – Referral Partner Agreement*

### Referral Partner Agreement – EmployWell Program
*(Under the Jurisdiction of the State of Hawai'i)*

This Referral Partner Agreement ("Agreement") is entered into as of the effective date below by and between:

**Referral Partner Name:** _Cory Nunes_____

**Business Name (if applicable):** _____

**EIN (if business):** _____

**Address:** _356 Craig St. 1343
Ferndale Ca. 95536_____
(*Hereinafter referred to as the "Referral Partner"*)

and

**A-1 VA Ratings West**, operating the **EmployWell Program**, a business entity organized and operating under the laws of the **State of Hawai'i**.

*1. Purpose*

This Agreement establishes the terms by which the Referral Partner may refer eligible businesses and employees to the EmployWell Program in exchange for commission-based compensation.

*2. Commission Structure*

Referral Partners will receive **$15 per enrolled employee per month**, based on net profits after program costs. This commission may be adjusted with prior written notice.

Commissions are: - Based on the number of active, enrolled employees retained each month - Contingent on client billing status and employee participation in the program

EmployWell will issue monthly summaries confirming commissions. Payouts may fluctuate based on client changes or program modifications.

*3. Payment Schedule*

Commissions will be paid **bi-weekly on Fridays**, no later than two (2) weeks after EmployWell receives funds from carrier or partner networks.

If there are delays, EmployWell will notify the Referral Partner with an estimated payment date.

*4. Independent Contractor*

The Referral Partner is an **independent contractor**. This Agreement does not create an employment, agency, or representative relationship. The Referral Partner is responsible for all applicable tax obligations.

*5. Non-Circumvention & Non-Competition*

**Non-Circumvention:** Referral Partner will not redirect referred clients to competing programs.

**Non-Competition:** Referral Partner agrees not to create, advise, or participate in any service that competes with EmployWell's systems, relationships, or processes during the term and for two (2) years following termination.

Violation may result in termination and forfeiture of unpaid and future commissions.

## 6. Confidentiality

The Referral Partner agrees to maintain the confidentiality of all proprietary data, client information, compensation structures, and referral systems. This obligation survives termination for five (5) years.

## 7. Jurisdiction

This Agreement is governed by the laws of the **State of Hawai'i**. All legal proceedings shall occur in **Honolulu County, Hawai'i**.

## 8. Arbitration Clause

Unresolved disputes shall be settled by **binding arbitration in Honolulu, Hawai'i**. Each party bears its own costs. The decision shall be final and enforceable.

## 9. Termination

Either party may terminate this Agreement with **ten (10) days' written notice**. Immediate termination is allowed for breaches related to confidentiality or competition.

Commissions accrued before termination will be paid. No new commissions accrue after.

## 10. Entire Agreement

This Agreement represents the entire understanding between the parties. Amendments must be in writing and signed by both parties.

**Referral Partner Signature:** _____

**Name:** __Cory Nunes_____

**Date:** _06/26/2025_____

**A-1 VA Ratings West Representative Signature:** _____

**Name:** _____

**Date:** _____

---

## Marketing & Branding Guidelines

To maintain a unified and professional image for the EmployWell Program, all Referral Partners must adhere to the following branding standards:

**Approved Messaging:** - Use only the official pitch deck, one-pagers, and digital assets provided by A-1 VA Ratings West. - Do not alter or paraphrase program descriptions or savings claims. - Emphasize the mission: tax savings, preventive benefits, employee retention, and veteran support.

**Logo Usage:** - Logos must not be stretched, recolored, or altered. - Only use high-resolution files provided in the Partner Portal. - No co-branding without express written permission.

**Social Media & Public Statements:** - All public representations must be pre-approved if they include statistics, results, or official claims. - Referral Partners may share pre-approved posts from A-1 VA Ratings West social accounts.

**Email & Client Communication:** - Use branded email footers (provided upon onboarding). - Direct complex client questions to the EmployWell Team via CRM or liaison.

**Violations of these guidelines may result in brand review, marketing suspension, or termination of partnership privileges.**

---

## Support & Escalation

**Primary Contact**: Wayne. M
**Email**: support@a1vawest.com
**Phone**: (808) 856-5433
**Portal**: www.a1vawest.com/partners

---

## Acknowledgment

I acknowledge that I have received, read, and understand the A-1 VA Ratings West EmployWell Partner Manual and agree to operate under the terms outlined.

**Name:** _Cory Nunes
**Signature:** _____
**Date:** 06/26/2025_____

---

*EmployWell Program | Page 1*